*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

>    *Plaintiff-Appellee,*

>    *v.*

Nos. 02-6245/6302

JAMES SYLVESTER MILAN, JR. (02-6245) and SHARN
RAYNARD MILAN (02-6302),

>    *Defendants-Appellants.*

---

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 01-10031—James D. Todd, Chief District Judge.

Submitted: June 25, 2004

Decided and Filed: February 10, 2005

Before: KEITH and CLAY, Circuit Judges; O'MEARA, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, Robert C. Brooks, Memphis, Tennessee, for Appellants. James W. Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Defendants, James Sylvester Milan, Jr. and Sharn Raynard Milan, appeal from the judgments issued by the United States District Court for the Western District of Tennessee, entered on September 11, 2002, and September 24, 2002, respectively, finding Defendants guilty of conspiracy to possess with intent to distribute and distribution of fifty grams or more of a mixture or substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846. For the reasons set forth below, as to Sharn Raynard Milan, we **VACATE** the district court's judgment and **REMAND** the case for re-sentencing; and, as to James Sylvester Milan, Jr., we **AFFIRM** the district court's judgment.

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

## PROCEDURAL HISTORY

A federal grand jury returned an indictment on July 16, 2001. A superseding indictment was filed on October 15, 2001, charging Defendants with conspiracy to possess with intent to distribute and distribution of fifty grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution) and § 846 (conspiracy).

On October 2, 2001, a plea agreement for Sharn Raynard Milan ("Sharn") was entered. On October 10, 2001, a plea agreement for James Sylvester Milan, Jr. ("James") was entered.

On September 11, 2002, judgment was entered, finding James guilty of the conspiracy and sentencing him to a term of 135 months. On September 24, 2002, judgment was entered, finding Sharn guilty of the conspiracy and sentencing him to a term of 264 months. After entry of judgment, each Defendant filed a timely notice of appeal. On June 24, 2004, pursuant to the government's motion for a reduction in Sharn's sentence for substantial assistance, *see* FED. R. CRIM. P. 35(b), the district court reduced Sharn's sentence to 188 months.

## FACTS

The Presentence Investigation Reports of James and Sharn offer identical accounts of the substantive facts, stating that a confidential informant ("CS-2") had indicated

> that Sharn Raynard Milan and Stephen Dorrell Milan were major distributors of crack cocaine in Trenton, Tennessee, and that James Sylvester Milan, Jr. and Andre Anderson were selling crack cocaine for them. . . . CS-2 provided information that led to the introduction of a Drug Task Force undercover agent to members of Sharn Raynard Milan's organization. During the course of this investigation, CS-2 participated in several controlled purchases of crack cocaine involving Andre Anderson, Sharn Raynard Milan, and James Sylvester Milan, Jr. . . .

(J.A. at 136, 179.)

Undercover agents arranged and executed numerous purchases of crack cocaine from Defendants. On August 6, 1999, another confidential informant ("CS-1") arranged a purchase of from Sharn of a quantity of crack cocaine that was later measured to be 67.5 grams. On later dates, CS-2 arranged by phone to purchase crack cocaine from Anderson; then, CS-2 – equipped with a listening device and accompanied by an undercover agent – went to Anderson's residence and completed these purchases of crack cocaine.

On September 20, 2000, with an agent listening to the call, CS-2 arranged by phone to purchase crack cocaine "from Sharn Raynard Milan through James Sylvester Milan, Jr." (J.A. at 137, 181.) Then, Agent Eric Holmes and "CS-2 entered James Sylvester Milan, Jr.'s residence . . . and in their own vehicle subsequently followed a vehicle driven by James Sylvester Milan, Jr. to the residence of Sharn Raynard Milan . . . where James Sylvester Milan, Jr. entered the vehicle driven by Agent Holmes and CS-2." (J.A. at 137, 181.) CS-2 and Agent Holmes purchased from James a quantity of crack cocaine that was later measured to be 22.4 grams.

On September 25, 2000, at Sharn's residence, undercover agents purchased from James a quantity of crack cocaine that was later measured to be 71.0 grams; during the purchase, "James Sylvester Milan, Jr. went into the residence and Sharn Raynard Milan came outside and looked at the agent." (J.A. at 137, 181.) On October 4, 2000, an undercover agent purchased a quantity of crack cocaine that was later measured to be 70.7 grams from James at Sharn's residence; during the purchase, "[t]he undercover agent observed James Sylvester Milan, Jr. walk over to Sharn Raynard

Milan and receive a package from him"–the package contained the crack cocaine. (J.A. at 138, 182.) In the course of these arrangements, an incident occurred in which James came uninvited to CS-2's residence and accused CS-2 of being a federal agent; CS-2 believed that James had a firearm in his pocket, due to James's gestures.

On July 16, 2001, a federal grand jury indicted Sharn and James. A superseding indictment was filed on October 15, 2001, charging Defendants with conspiracy to possess with intent to distribute and distribution of fifty grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution) and § 846 (conspiracy). On October 2, 2001 and October 10, 2001, respectively, Sharn and James pled guilty.

On September 6, 2001, Sharn gave a proffer statement to agents, admitting to having sold cocaine on various occasions. On September 19, 2001, James gave a proffer statement to agents, stating, *inter alia*, that Sharn was his first cousin and describing both his own role and Sharn's role in crack cocaine distribution.

## DISCUSSION

Defendants initially raised four arguments in this case. Sharn argued, first, that his rights under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.8 were violated when his sentence was calculated based on drug amounts referred to in his proffer statements and those of his co-defendants; second, that the offense level was improperly increased for possession of a firearm during the offense, pursuant to U.S.S.G. § 2D1.1; and, third, that the offense level was improperly increased for a leadership or organizer role, pursuant to U.S.S.G. § 3B1.1(a). Finally, James argued that the district court erred in using the proffer statements of his co-defendants to calculate his offense level, in violation of U.S.S.G. § 1B1.8.

However, on June 24, 2004, after briefs were filed in this appeal, the Supreme Court issued its decision in *Blakely v. Washington*, 542 U.S. — , 124 S.Ct. 2531 (2004), in which the Court invalidated the state of Washington's determinate sentencing system on Sixth Amendment grounds. In response to *Blakely*, Sharn and James moved for leave to file supplemental briefs on the Sixth Amendment implications of their sentencing determinations. We have reviewed the defendants' supplemental briefs as well as the government's responses. Now, with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. — , 125 S. Ct. 738 (Jan. 12, 2005), to guide us, we conclude that Sharn's case must be remanded for re-sentencing. As to James, we conclude that his sentencing determination was proper, even in light of *Booker*. However, these holdings do not completely dispose of the case. Defendants' claim that the district court failed to comply with U.S.S.G. § 1B1.8 remains for us to consider. We do so *infra* at Part III of this opinion, where we hold that (1) § 1B1.8 remains binding on the district courts after *Booker*; and (2) the district court did not violate § 1B1.8 in this case because in determining Defendants' sentences it considered only the proffer statements of the co-defendants, not those of Defendants themselves. In determining Sharn's sentence on remand, therefore, while the district court is bound by *Booker*'s instruction that its sentencing determination be "reasonable" and by Congress's command that the sentence not exceed the statutory maximum,[1] the court is free to consider the proffer statements of Sharn's co-defendants. As to James, we hold that his sentence is consistent with the Sixth Amendment and with § 1B1.8 of the Guidelines and therefore affirm the judgment of the district court.

We turn now to the Sixth Amendment claims of each defendant.

---

[1] In this case the maximum penalty under the statute is life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(iii).

# I.

Sharn pled guilty to conspiracy to possess with intent to distribute and distribution of fifty grams or more of a mixture or substance containing cocaine base. Sharn made no further factual admissions beyond those implicit in his guilty plea. At Sharn's September 24, 2002 sentencing hearing, the district court determined that the base offense level was 38 because the Presentence Investigation Report ("PIR") attributed at least 1.5 kilograms of crack cocaine to Sharn. *See* U.S.S.G. § 2D1.1(c)(1). Next, the court applied a 2-level enhancement under § 2D1.1(b)(1) on the strength of the government's allegation that Sharn possessed a firearm during the commission of the offense to which he pled. The court then applied a 4-level enhancement under § 3B1.1(a) because it found that Sharn "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *Id.* The court then proceeded to reduce Sharn's offense level – which then stood at 44 – as follows: First, the court applied a 3-level reduction for acceptance of responsibility. Second, the court granted the government's motion under § 5K1 and applied a further 4-level reduction, agreeing with the government that Sharn had provided substantial assistance. When all modifications were complete, Sharn had an offense level of 37 and a criminal history category of II, which warranted a sentence between 235 and 293 months under the guidelines. Thus, on September 24, 2002, the court sentenced Sharn to 264 months, the sentence he now appeals.

However, after the parties filed their briefs in this appeal, the district court further reduced Sharn's sentence. At some point during the spring of 2004, the government filed a motion with the district court for a reduction of Sharn's sentence on the grounds of substantial assistance. *See* FED. R. CRIM. P. 35(b). On June 24, 2004, the court granted the motion, reduced Sharn's offense level from 37 to 34, and sentenced Sharn to 188 months. Some three weeks later, on July 15, 2004, Sharn submitted a supplemental brief urging us to remand for re-sentencing on all of the claims he raises in light of the Supreme Court's decision in *Blakely v. Washington*. Sharn did not apprise us of the June 24, 2004 reduction in his sentence, but the government, not surprisingly, did so in its reply brief. However, despite the government's suggestion to the contrary, and in light of the Supreme Court's decision in *United States v. Booker*, we conclude that Sharn does have standing to challenge his sentence on Sixth Amendment grounds.

We reach this conclusion because Sharn's sentence – even at its current reduced level of 188 months – is not authorized by the facts to which he admitted. And as the Court held in *Booker*: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. Sharn did not admit to anything beyond conspiring to possess with the intent to distribute and to distribute 50 grams or more of a mixture or substance containing cocaine base. Accordingly, the proper base offense level is 32. *See* U.S.S.G. § 2D1.1(4). With Sharn's criminal history category of II, the maximum sentence authorized by law is 168 months. *See* U.S.S.G. SENTENCING TABLE. Similarly, Sharn's two enhancements – for possession of a firearm, U.S.S.G. § 2D1.1, and for being an organizer or leader of a criminal activity, § 3B1.1(a) – were not based on facts he admitted. Consequently, both sentencing enhancements and the base offense level calculation are controlled by the Supreme Court's decision in *United States v. Booker*. However, because Sharn first raised his Sixth Amendment argument during this appeal, we must determine whether his sentence, which depends on facts not admitted by him nor proven to a jury beyond a reasonable doubt, constitutes plain error. If it does, we must remand for re-sentencing in light of *Booker*.

Initially, we explain why plain error review is warranted. In *Booker*, the Supreme Court made clear that its holdings in the case may have implications for many cases presently on review in the courts of appeal: "As these dispositions indicate, we must apply today's holdings . . . to all cases on direct review." *Booker*, 125 S. Ct. at 769 (citing *Griffith v. Kentucky*, 479 U.S. 314, 328

(1987)) (other citations omitted).  This is not to say, as the Court further reasoned, "that every sentence gives rise to a Sixth Amendment violation . . . [nor] that every appeal will lead to a new sentencing hearing."  *Id.*  Our duty, in light of the Supreme Court's instruction on the matter, is "to apply ordinary prudential doctrines, [to determine], for example whether the issue was raised below and whether it fails the 'plain error' test."  *Id.*  It is not surprising that the Court would so instruct us, in light of *United States v. Cotton*, 535 U.S. 625 (2002), in which the Court reviewed for plain error a federal defendant's claim that his sentence conflicted with *Apprendi v. New Jersey*, 530 U.S. 466 (2000) – which was decided during the pendency of the defendant's appeal – because the indictment under which the defendant was charged omitted a fact that enhanced the maximum sentence he could receive.  *See Cotton*, 535 U.S. at 627, 632-34.

The Supreme Court's endorsement of plain error review in *Booker* is also consistent with Rule 52(b) of the Federal Rules of Criminal Procedure which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b).  Thus we think it appropriate to apply plain error review in this instance, *see also United States v. Ameline*, 376 F.3d 967, 978 (9th Cir. 2004) (reviewing for plain error a Sixth Amendment claim not raised at trial but raised on appeal pursuant to *Blakely*), just as we already have in similar contexts.  *See United States v. Stewart*, 306 F.3d 295, 313 (6th Cir. 2002) (holding that a constitutional challenge to a federal sentence, although not available at the time of sentencing because the Supreme Court's decision in *Jones v. United States*, 526 U.S. 227 (1999) had not yet issued, must be reviewed for plain error).

Under the plain error test, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'"  *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993)); *see also Cotton*, 535 U.S. at 631.  If we find that "all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if [ ] the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  *Johnson*, 520 U.S. at 467 (quoting *Olano*, 507 U.S. at 732); *Cotton*, 535 U.S. at 631-32.

We do not find it difficult to conclude that Sharn's sentence was the result of plain error. To address the first two requirements of plain error review, we note that where, as is the case here, "the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration . . . ."  *Johnson*, 520 U.S. at 468.[2]  Accordingly, the imposition of a sentence in excess of the maximum authorized by the facts Sharn admitted was a plain error.  *See Booker*, 125 S. Ct. at 756 (holding that such sentences violate the Sixth Amendment).  It is equally clear that the error affected Sharn's substantial rights.  As the Supreme Court has reasoned, this usually means that the error "must have been prejudicial:  It must have affected the outcome of the district court proceedings."  *Olano*, 507 U.S. at 734; *see also Cotton*, 535 U.S. at 632.  In Sharn's case the error *determined* the outcome of the district court proceedings in the sense that the sentence Sharn received – imposed under mandatory guidelines – depended on the consideration of facts he did not admit and which were not proven to a jury. Indeed, Sharn's 188 month sentence is 20 months longer than the maximum sentence authorized by the facts he admitted when he pled guilty.  We decline to hypothesize alternative sentences the district court might have imposed had it anticipated *Booker*.  It is clear that had the district court not found facts on its own at sentencing, which under *Booker* constitutes a violation of the Sixth Amendment, Sharn's sentence would have been materially different.  Just as we have held that unwarranted reductions of sentences affect substantial rights, *see United States v. Bostic*, 371 F.3d

---

[2]Both Sharn and James timely brought their Sixth Amendment claims to the Court's attention by way of filing supplemental letter briefs pursuant to FED. R. APP. P. 28(j) after the Supreme Court issued its decision in *Blakely*.  Rule 28(j) permits parties to submit such letters even after oral argument, as Defendants did in this case.  *See* R. 28(j).

865, 876 (6th Cir. 2004) ("A sentencing error affects substantial rights when 'it affects the outcome of the case by substantially reducing the defendant's sentence.'") (citation omitted), we must hold that unconstitutional enhancements of sentences do so as well.

Finally, we further conclude that it is proper for us to consider the merits of Sharn's admittedly forfeited claim  because, under *Booker*, sentencing a defendant on the basis of judicial fact-finding is an error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (quoting *Olano*, 507 U.S. at 732).  Significantly, this is not a case where a jury considered overwhelming evidence tending to attribute more than 50 grams of cocaine base to Sharn. *Cf. Cotton*, 535 U.S. at 633 (finding no plain error where the evidence at trial "that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted'") (footnote omitted).  Instead, like *Booker*, this is a case where the judge alone found the facts that determined the defendant's sentence. *See Booker*, 125 S. Ct. at 751 ("The jury never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence.").  As we have made clear, Sharn's sentence was materially enhanced as a result of a Sixth Amendment violation.  We are satisfied that an error of this sort "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (quoting *Olano*, 507 U.S. at 732).  *See also Bostic*, 371 F.3d at 876-77 ("[A] sentencing error that leads to a substantial departure affects the fairness and integrity of judicial proceedings because 'permitting sentencing courts to disregard governing law would diminish the integrity and public reputation of the judicial system . . . .'") (quoting *United States v. Barajas-Nunez*, 91 F.3d 826, 833 (6th Cir. 1996)).

Accordingly, we hold that the district court committed plain error when it sentenced Sharn to 188 months of imprisonment.  By pleading guilty, Sharn admitted involvement with no more than 50 grams of cocaine base, which supports a base offense level of 32.  Furthermore, Sharn did not admit he possessed a firearm or was an organizer of a criminal activity.  With his criminal history category of II, therefore, the maximum lawful sentence under *Booker* is 168 months. *See* U.S.S.G. SENTENCING TABLE.  Consequently, we remand Sharn's case for re-sentencing in light of *Booker*.

In addition, we note that our plain error analysis is in step with the recently-filed decision of our Court in *United States v. Oliver*, — F.3d —, 2005 WL 233779 (6th Cir. Feb. 2, 2005).  *Oliver*, which is the first published opinion interpreting *Booker* for the Sixth Circuit and therefore controls in this case,[3] found plain error where the defendant's sentence exceeded the maximum authorized by the jury verdict and his prior convictions. *See Oliver*, 2005 WL 233779, at *6-9.  This result is consistent with the Fourth Circuit's controlling interpretation of *Booker*. *See United States v. Hughes*, — F.3d —, 2005 WL 147059 (4th Cir. Jan. 24, 2005).  The error at Sharn's sentencing – as it was in *Oliver* and *Hughes* – was the imposition of a mandatory sentence based upon judicial fact-finding in excess of the maximum authorized without judicial fact-finding.  We are aware that two circuits have concluded that because the Supreme Court's remedy was to render the guidelines advisory, rather than to invalidate them *in toto* or graft onto them a sentencing jury requirement, *Booker*-type Sixth Amendment violations may not constitute plain error. *See United States v. Rodriguez*, — F.3d — , 2005 WL 272952 (11th Cir. Feb. 4, 2005); *United States v. Crosby*, — F.3d —, 2005 WL 240916 (2d Cir. Feb. 2, 2005).  Indeed, it appears that in the Eleventh Circuit, most Sixth Amendment errors will not result in remands for resentencing because the appealing defendant will not be able to demonstrate a reasonable probability that he was prejudiced by the *Booker* error. *See Rodriguez*, 2005 WL 272952, Slip Op at 17-35.  The Second Circuit's approach will be to remand to the district court in all cases. *See Crosby*, 2005 WL 240916, at *8-11.  Under *Crosby*,

_____

[3]One day after the panel in *Oliver* filed its opinion, a different panel of this Court filed its opinion in *United States v. Bruce*, — F.3d —, 2005 WL 241254 (6th Cir. Feb. 3, 2005).  To the extent *Bruce* conflicts with *Oliver*, we note that we must follow *Oliver* because it was decided first. *See* 6th Cir. R. 206(c).

however, the district court is not to automatically resentence but instead must itself conduct a plain or harmless error inquiry in order to determine whether it ought to resentence the defendant. *See id.*

In our judgment, a critical aspect of *Booker* has escaped the Eleventh and Second Circuits' thinking on these matters – namely, that the Supreme Court remanded Booker's case for resentencing. It is certainly our obligation as courts of appeal to carefully consider what the Supreme Court said in *Booker*. Nevertheless, we cannot ignore what the Court *did*. At the very least, a remand for resentencing of Booker must rest on a decision that the error in his case was reversible, i.e., was not harmless and affected Booker's substantial rights. *See* FED. R. CRIM. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded."). In fact, as our colleagues observed in *Oliver*, we can safely conclude that, in the ordinary case, a *Booker*-type Sixth Amendment violation affects substantial rights. *See Oliver*, 2005 WL 233779, at \*8 (noting that *Booker* presumes that any Sixth Amendment error is not harmless); *see also Booker*, 125 S. Ct. at 769 ("[I]n cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine."). But the Supreme Court's treatment of Booker's case may suggest something more. It turns out that Booker did not make a Sixth Amendment objection to his sentence in the district court. In fact, Booker's Sixth Amendment challenge first appeared in a supplemental brief to the Seventh Circuit, which he filed soon after the Supreme Court's decision in *Blakely*. The Government pointed this out in its petition for certiorari, *see* Pet. for Cert., 2004 WL 1638204, at \*3-4, but, inexplicably, the Supreme Court did not address whether Booker's sentence was plain error. Yet the most reasonable reading of the Court's disposition of Booker's case suggests that the Court thought it was. After all, in *Booker*, the Supreme Court quite explicitly instructs reviewing courts to determine whether an appealing defendant made a Sixth Amendment argument in the district court and to review for plain error if he did not. *See Booker*, 125 S. Ct. at 769. We cannot fathom why the Court would not follow its own instruction, although it may be for the simple, and strange, reason that the Seventh Circuit declined to address the question of plain error because the Government apparently did not raise the issue. *See United States v. Booker*, 375 F.3d 508, 515 (7th Cir. 2004).[4]

Still, it would be improper for us to assume that Booker's sentence was plain error because the Court did not say that it was. Instead, the Court simply remanded Booker's case for resentencing, having found that his sentence violated the Sixth Amendment. As we indicate *supra*, this amounts – at the very least – to a holding that sentencing Booker in a manner that violated the Sixth Amendment affected his substantial rights. It is hard to see how the Eleventh Circuit's decision in *Rodriguez* is consistent with this result. In *Rodriguez*, the court centered its plain error analysis on whether the defendant, whose sentence violated the Sixth Amendment, could show that the constitutional violation prejudiced him. *See Rodriguez*, 2005 WL 272952, Slip Op. at 17-35. As we have made clear, both by way of its analysis of the Sixth Amendment issue and by way of its disposition of the case – a remand for resentencing – the Supreme Court held that Booker was prejudiced by the constitutional violation in his case.[5] Finally, we note that just as *Rodriguez* appears to conflict with *Booker*, so, too, does *Crosby*, albeit less dramatically. The Supreme Court in *Booker* instructed "reviewing courts" to determine whether a sentencing error was plain. We think this precludes the ingenious approach adopted by the Second Circuit in *Crosby*. The Supreme Court phrased its instructions to reviewing courts in terms of what has long been accepted practice

---

[4]We do not understand plain error review to depend on whether the appellee raises the appellant's forfeiture of an argument.

[5]For the reasons stated in this opinion, we cannot imagine how the Court's analysis in *Booker* would have been altered if the Court had additionally considered the fourth prong of the plain error test, i.e., whether the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

in the federal courts and did not suggest that this accepted practice must change in the wake of *Booker*. Indeed, in *Booker* the Supreme Court itself reviewed Booker's case and remanded for resentencing; it did not see fit to remand to the district court to determine in the first instance whether resentencing was warranted. Consequently, we think it proper that the court of appeals itself review a claimed error for whether it is plain, or whether it is harmless, and remand for resentencing in appropriate cases. Sharn's is such a case and we are confident that a remand for resentencing is the correct result under *Booker*.

## II.

James also submitted a supplemental brief to the effect that his sentence is inconsistent with the Sixth Amendment. However, James did not receive a sentence in excess of the maximum sentence authorized by the facts he admitted in his guilty plea. James received a sentence of 135 months of imprisonment. Because he pled guilty to conspiracy to possess with intent to distribute and distribution of at least 50 grams of a mixture or substance containing cocaine base, James's base offense level was 32.[6] *See* U.S.S.G. § 2D1.1(c)(4). With his criminal history category of III, the maximum sentence allowable under *Booker* – i.e., under the facts James admitted – would be 188 months. *See* U.S.S.G. SENTENCING TABLE; *see also Booker*, 125 S. Ct. at 756 (holding that the Sixth Amendment requires sentences to be based on facts admitted by the defendant or proven to a jury beyond a reasonable doubt). Consequently, it is clear that the sentence James actually received is lower than the maximum sentence permitted under *Booker*. Therefore, James is not entitled to re-sentencing on the grounds that his sentence violates the Sixth Amendment.[7]

## III.

We now consider the argument of both defendants that the district court violated U.S.S.G. § 1B1.8 in calculating their base offense levels. We held *supra* that Sharn's case must be remanded for re-sentencing in light of *Booker* because he did not admit to involvement with 1.5 kilograms of cocaine base, nor to possessing a firearm, nor to being an organizer of a criminal activity. In contrast, we held that, under *Booker*, James's sentence is consistent with the Sixth Amendment. These holdings do not dispose of the case. We must still address both defendants' claims that the court violated § 1B1.8 of the Guidelines in determining the amount of cocaine base attributable to them. Section 1B1.8 of the Guidelines prohibits use of a defendant's proffer statements in determining his sentencing range. *See* U.S.S.G. § 1B1.8. In *Booker*, the Supreme Court rendered the Sentencing Guidelines non-mandatory. *See Booker*, 125 S. Ct. at 764-65 (severing the portions of the Guidelines that made them mandatory). Nevertheless, the Court held, the Guidelines are to be considered by the district courts when they sentence defendants and those sentences are to be reviewed for reasonableness by the courts of appeals in light of the factors listed at 18 U.S.C.

---

[6]On the basis of the co-defendants' proffer statements – which attributed more than 500 grams of cocaine base to James – the district court assigned James a base offense level of 36. The district court also enhanced James's offense level by two levels for possession of a firearm and then reduced it by three for acceptance of responsibility. The record provided to us on appeal does not disclose how James secured a sentence of 135 months when his final offense level was 35 and his criminal history category was III. *See* U.S.S.G. SENTENCING TABLE (providing a sentencing range of 210-262 months for offenders with those characteristics). In any event, as our discussion makes clear, his sentence is clearly authorized by the facts he admitted and therefore does not contravene the Sixth Amendment as interpreted in *Booker*.

[7]There may be federal criminal defendants whose cases were on direct review at the time the Supreme Court issued *Booker* who are entitled to remand even though their sentences are consistent with the Sixth Amendment. For example, after *Booker* a defendant might appeal the denial of a downward departure on the grounds that since *Booker* rendered the guidelines advisory, it was plain error to view them as mandatory and deny a departure. This is not such a case. James asserts only that his sentence is plain error because it violates the Sixth Amendment and, as our discussion makes clear, it does not.

§ 3553(a).  *Id*. at 764-65.  The *Booker* decision does not address U.S.S.G. § 1B1.8[8] but we decline to interpret *Booker*'s holding that the Guidelines are not mandatory to mean that district courts are now permitted to consider at sentencing defendants' own proffer statements, which are explicitly protected under § 1B1.8.  Indeed, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1), which required district courts to sentence defendants "within the applicable Guidelines range," but recognized that "[t]he remainder of the [Sentencing Reform Act] 'functions independently.'"  *Id*. at 764 (quoting *Alaska Airlines, Inc., v. Brock*, 480 U.S. 678, 684 (1987)).

Our view that § 1B1.8 remains binding on the district courts after *Booker* has implications for both defendants in this case.  As to Sharn, when the district court determines his sentence anew, it will no longer be constrained by the sentencing ranges prescribed by the Guidelines. Nevertheless, the court must sentence Sharn to a term within the statutory minimum and maximum, *see* 21 U.S.C. § 841(b)(1)(A), and, under *Booker*, the sentence on the whole must be reasonable. *See Booker*, 125 S. Ct. at 765-67.  So long as Sharn's ultimate sentence meets these requirements, the district court is free to – and obviously will – engage in fact-finding as it considers various sentencing options.  We must, therefore, determine the extent to which the district court, when it finds facts at sentencing, is constrained by § 1B1.8.  We hold that, just as before *Booker*, section 1B1.8 permits a district court to consider the proffer statements of co-defendants in determining a defendant's sentence but prohibits the court from considering the defendant's own proffer statements.  On remand in Sharn's case, then, the district court is not precluded as a matter of law from considering the proffer statements of Sharn's co-defendants.

As to James, we explained *supra* at Part II of this opinion that we need not remand James's sentence on Sixth Amendment grounds.  However, if we find that the district court violated § 1B1.8 by considering James's proffer statements, this error, unless it was harmless, would warrant a remand even after *Booker* because § 1B1.8 remains binding on the district courts and, in any event, a sentence based on facts found through a violation of § 1B1.8 would be unreasonable.  We now review the evidence considered by the district court as to each defendant and conclude that the court did not violate § 1B1.8 in either case.

In Sharn's case, the government recommended an offense level of 38 in the Presentence Investigation Report ("PIR"), based on an attribution of at least 1.5 kilograms of "crack" cocaine to him.  *See* U.S.S.G. § 2D1.1(c)(1).  This quantity was supported through sources that were independent of Sharn's proffer statement.  The PIR stated, "In the absence of Sharn Raynard Milan's self-incriminating statement during the presentence interview, the presentence writer would have attributed 241 ounces of crack cocaine (6,832.25 grams of crack) to Sharn Raynard Milan based on the proffer statements of Andre Anderson." (J.A. at 140).  *See also* (J.A. at 142) (1,240.3125 grams, based on the proffer statements of Santayan Deon Mayberry); (J.A. at 145) (783.5 grams, based on

---

[8]U.S.S.G. § 1B1.8 states, in full:

(a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

(b) The provisions of subsection (a) shall not be applied to restrict the use of information:
 (1) known to the government prior to entering into the cooperation agreement;
 (2) concerning the existence of prior convictions and sentences in determining § 4A1.1 (Criminal History Category) and § 4B1.1 (Career Offender);
 (3) in a prosecution for perjury or giving a false statement;
 (4) in the event there is a breach of the cooperation agreement by the defendant; or
 (5) in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities).

the proffer statements of Stephen Dorrell Milan).  Sharn did not object to the PIR.  James, however, did object to the PIR's use of the proffer statements of co-Defendants Sharn and Santayan Mayberry regarding the amount of cocaine attributable to him; the co-defendants' statements were similar in substance to the statements in James's proffer.  At the sentencing hearing, James's counsel reiterated the objection.  The district court denied the objection.  The district court stated that the cooperation agreement "make[s] clear that if the only basis of the government's knowledge is what [James] told them, they can't use it against him.  If the government had that information from somewhere else, then it is usable against [James]."  (J.A. at 103.)

As to both James and Sharn, this statement of the law was correct.  The court was permitted to use co-Defendants' proffer statements in calculating Defendants' drug amounts, so long as the court did not use one defendant's proffer statement against that defendant.  *See United States v. Baird*, 218 F.3d 221, 231 (3d Cir. 2000) (holding that while a defendant's own statements may not be considered, "[i]nformation separately gleaned from co-defendants is . . . fair game."); *United States v. Gibson*, 48 F.3d 876, 879 (7th Cir. 1995) ("The district court found that the probation officer was relying on information [from two co-defendants] independent from that presented by Gibson."); *United States v. Davis*, 912 F.2d 1210, 1213 (10th Cir. 1990) ("There is no indication that the co-defendants' statements were elicited as a result of Davis' plea agreement with the government, and Davis provided no evidence that, had he refused to cooperate, his co-defendants likewise would not have offered the information about the correct quantity of drugs involved.").

Accordingly, we conclude that the district court did not violate § 1B1.8 when it considered the information provided in co-Defendants' proffer statements in sentencing Sharn and James.  On remand for re-sentencing of Sharn, then, the district court is free to consider these statements without running afoul of § 1B1.8 so long as it issues a sentence that is reasonable under *Booker* and is within the statutory range prescribed by 21 U.S.C. § 841(b)(1)(A).  Finally, to the extent James additionally challenges the reliability of his co-defendants' proffer statements, we conclude that the district court's reliance on these statements was not unreasonable because it is not obvious that the statements were untruthful.  Accordingly, because James's sentence is consistent with the Sixth Amendment and with § 1B1.8 of the Guidelines, we affirm his sentence.

## CONCLUSION

For the foregoing reasons, as to Sharn Raynard Milan, we **VACATE** the judgment of the district court and **REMAND** for re-sentencing in light of *Booker*.  As to James Sylvester Milan, Jr., we **AFFIRM** the judgment of the district court.