JULIA SMITH GIBBONS, Circuit Judge.
Defendant-appellant Robert Turner was indicted on sixty counts of health care fraud related to his company’s knowing submission of false insurance claims. Pursuant to a plea agreement, Turner pled guilty to one count of fraud, and the remaining counts were dismissed. The district court sentenced Turner under the United States Sentencing Guidelines (“Guidelines”), relying on general deterrence as the basis for the sentence. Turner now seeks resentencing in response to the Supreme Court’s decision in United States v. Booker, which reduced the Guidelines to an advisory role in the sentencing process. 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Turner also claims that (1) the use of general deterrence as a sentencing goal is illegal under 18 U.S.C. § 3553(a); and (2) even if legal, judges’ discretion in the use of general deterrence as a sentencing factor should be constrained post-Boo/cer.
For the following reasons, we AFFIRM the district court ruling.
I.
Robert Edward Turner operated a series of cardiovascular testing operations between April 1996 and 2000. Turner’s cardiovascular testing operations involved offering free cardiovascular screening at businesses. Depending on the results of the initial screening, Turner’s businesses conducted further, expensive testing on an individual basis and submitted the bills for these tests to various insurance companies for reimbursement. Valid insurance reimbursement claims require that a qualified physician review the initial screening and request, perform, and review the results of the follow-up testing.
Between February 15,1998 and January 31, 2001, Turner’s businesses operated *404 pursuant to contracts with doctors. Turner acquired signature stamps from these doctors but never called upon them to perform any professional duty. Instead, the stamps were used, without, the physicians’ knowledge, to misrepresent that (1) the results of the cardiovascular tests had been reviewed by a physician, and (2) a physician had diagnosed each patient. The plea agreement states that Turner was “at least wilfully ignorant” of the use of the stamps to submit false insurance reimbursement documents. During the period of this fraud, Turner has admitted submitting reimbursement claims totaling $1,273,733, for which his businesses received $958,515.
Turner was indicted by a grand jury on January 13, 2004 on sixty counts of fraudulently submitting insurance claims in violation of 18 U.S.C. § 1347. He pled guilty pursuant to an agreement that relied on stipulated facts. The agreement stipulated in paragraph 3 that “Mr. Turner acknowledges that he understands that his case is governed by the ... Guidelines____ Defendant affirms that no promises have been made by the United States as to what the ... Guidelines will be. Mr. Turner further acknowledges that he understands that the Court will determine the appropriate sentence under the ... Guidelines.” The agreement further stated that “[p]ursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties expressly agree that the appropriate sentence in this case will be determined by application of the ... Guidelines and that there will be no departures from those Guidelines except and unless upon motion by the United States for a downward departure .... The defendant agrees to waive any challenge to the validity of the Sentencing Guidelines.” During the plea hearing, which predated Booker, the court notified Turner that the Guidelines were of uncertain effect. Turner acknowledged his understanding. The court further instructed Turner that his plea was binding even if the sentence was harsher than expected, and Turner acknowledged this fact.
The court sentenced Turner pursuant to the Guidelines on November 19, 2004. The Presentence Investigation Report calculated Turner’s offense level to be 16, including a downward departure of 3 levels for acceptance of responsibility. Prosecutors entered a U.S.S.G. § 5K1.1 motion for a downward departure because Turner provided substantial information about other fraudulent cardiovascular testing operations. At the sentencing hearing, the court noted this motion and reduced the sentencing level to 14, producing a sentencing range of 15-21 months. At the hearing, Turner and his attorney sought a more lenient sentencing level that would include the possibility of split confinement.[1] The court, however, declined this request and instead sentenced Turner to a term of eighteen months in prison. The court imposed the sentence as a general deterrent to white-collar crime. Noting that none of the community protection, specific deterrence, or retribution justifications for punishment apply in this case, the court spoke at length about why prison sentences are especially important for deterring white-collar crime and thus why a lengthy prison sentence was justified in this case. Turner filed a notice of appeal on November 30, 2004.
II.
The court reviews criminal appeals of district court judgments for plain error *405 where the issues appealed were not raised below. Fed.R.Crim.P. 52(b); United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). In this case, the defendant failed to object below to the mandatory application of the Guidelines; the Supreme Court has acknowledged that plain error review is appropriate in this situation. Booker, 125 S.Ct. at 769; see also United States v. Milan, 398 F.3d 445, 450 (6th Cir.2005). Similarly, the defendant failed to object to the imposition of the sentence based on general deterrence goals; as a result, this issue is also governed by plain error analysis.
A court has committed plain error where the defendant shows that there is: “(1) error (2) that is plain (3) and that affects substantial rights.” Milan, 398 F.3d at 451 (quoting Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). An error is “plain” if it is clear or obvious. United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). A plain error affects substantial rights if it is prejudicial, or if it “affected the outcome of the district court proceedings.” United States v. Barnett, 398 F.3d 516, 526 (6th Cir.2005) (quoting Cotton, 535 U.S. at 632, 122 S.Ct. 1781). The court may notice a forfeited error if all three conditions are met and the error “seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Olano, 507 U.S. at 732, 113 S.Ct. 1770; see also Milan, 398 F.3d at 451.
The Supreme Court held in Booker that the mandatory application of the Guidelines to determine sentences violated the defendants’ Sixth Amendment right to have “[a]ny fact ... which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict ... admitted by the defendant or proved to a jury beyond a reasonable doubt.” 125 S.Ct. at 756 (Stevens, J). This holding reduced the Guidelines from a mandatory to an advisory role. Id. at 756-57 (Breyer, J.); Barnett, 398 F.3d at 525; United States v. Oliver, 397 F.3d 369, 381 n. 3 (6th Cir.2005). The Supreme Court also made clear in Booker that defendant Fanfan, whose sentence did not violate the Sixth Amendment, could also seek resentencing because its holding applies to “all eases on direct review.” 125 S.Ct. at 769. Like Fanfan, Turner cannot allege a Sixth Amendment claim: his sentence is “lower than [that] ... authorized by the Guidelines as written.” Id. at 769. He nonetheless retains a statutory claim. See United States v. Bradley, 400 F.3d 459, 463 (6th Cir.2005); United States v. Hamm, 400 F.3d 336, 339 (6th Cir.2005) (both allowing appeal where sentence was based solely on facts admitted in the guilty plea).
Treatment of the Guidelines as mandatory is plain error in this circuit. Oliver, 397 F.3d at 380-81, Barnett, 398 F.3d at 529-30; United States v. McCraven, 401 F.3d 693, 700 (6th Cir.2005). Thus, Turner’s appeal would normally be reversible. The United States argues, however, that Turner, in his plea agreement, waived his right to appeal his sentence.
It is clear as a matter of law that defendants may waive both constitutional and statutory rights as part of a plea bargain. Bradley, 400 F.3d at 463-64. The Supreme Court has held that plea agreements may also bar appeals based on changes in the law that occurred post-appeal. Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The Sixth Circuit has applied this reasoning in the Booker resentencing context, holding that claims for resentencing *406 may validly be waived by agreement. Bradley, 400 F.3d at 464.
Though it is clear that defendants may waive the right to appeal their sentences under the Guidelines, the requirements for doing so are considerably murkier. Bradley, the first decided case in the Sixth Circuit, held that the defendant waived his right to appeal where both parties specifically agreed to waive that right and agreed on the proper offense level under the Guidelines. 400 F.3d at 461. The Bradley court suggested that either of these provisions was sufficient to create a waiver of the right to appeal for resentencing. Id. at 465. The Bradley court’s opinion regarding the sufficiency of an agreement that the Guidelines would govern sentencing is dicta, however, because of the defendant’s explicit waiver in the case. The court in United States v. Amiker therefore declined to treat the Bradley holding as binding precedent when presented with the narrower issue. 414 F.3d 606, 607 (6th Cir.2005). In Amiker, the court held that where a defendant’s Sixth Amendment claims were abridged, an acknowledgment in the plea that sentencing would depend on the Guidelines did not effectuate a waiver of the right to appeal because “[t]he plain meaning of [the plea agreement] language, and the plain language of Booker and Blakely [v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ], indicate that consent to judicial fact-finding cannot be found in an ordinary plea agreement.” Id. The court further noted that all contemporary plea agreements included, either explicitly or implicitly, the requirement that the mandatory Guidelines would govern sentencing. Id. at 608.
The Amiker holding expressly left open the question of whether statutory Booker claims such as Turner’s may be waived by a general statement about the mandatory nature of the Guidelines in a plea agreement. Id. The court had previously discussed the issue in dicta in United States v. Gilliam, 127 Fed.Appx. 820, 824 (6th Cir.2005), and theorized that in such a case the appeal right would be waived. This dicta, like that in Bradley, appears to have been superseded by the recent case of United States v. Puckett, 422 F.3d 340 (6th Cir.2005). In Puckett, the defendant was sentenced pursuant to a plea that acknowledged the mandatory nature of the Guidelines; unlike in Amiker, the trial judge did not effect an upward departure, so the defendant could raise no Sixth Amendment claim on appeal. Id. at 343. The court held that Amiker applied, and that as a result the defendant had not waived his right to appeal. Id.
The government bases its waiver argument on the text of the plea agreement and on Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.[2] First, Turner acknowledged in the plea agreement that the sentencing process would be governed by the Guidelines. The government contends that this agreement is sufficient to effect a waiver of defendant’s right to appeal. In addition, the government identifies a specific provision of the plea agreement that it argues effects an explicit waiver of the right to appeal under Rule 11(c)(1)(C). That paragraph states that “the appropriate sentence in this case will *407 be determined by application of the ... Guidelines.... The defendant agrees to waive any challenge to the validity of the ... Guidelines.”
We hold that the text of the plea agreement is sufficiently clear to effect an explicit waiver of Turner’s right to appeal. Specifically, we agree with the government that Turner explicitly and knowingly waived his right to appeal when he: (1) agreed in his plea that the Guidelines will control his sentence; (2) agreed in his plea “to waive any challenge to the validity of the Guidelines” (emphasis added); and (3) acknowledged in open court that he knew that he had waived his rights. As the district court noted, there was significant uncertainty about the continuing applicability of the Guidelines after Blakely, and Turner’s waiver seems intentionally crafted to shield the court’s sentencing decision from appeal in light of this uncertainty. Because of the explicit nature of the waiver in this case, we hold that the defendant waived his right to appeal his sentence. Bradley, 400 F.3d at 461.
The dissent argues that Turner is not challenging the validity of the guidelines in this appeal. This distinction is semantic and ultimately unpersuasive because it is possible to cast even the dissent’s chosen framing of this appeal as a challenge to the validity of the Guidelines: Under this construction, Turner here challenges the validity of the district court’s mandatory application of the Guidelines. This contractual construction is unambiguous and is supported by the clear intent of the parties to avoid all Booker issues in this case. To ask the government to be more explicit would be manifestly contrary to the spirit of the bargain; when the parties negotiated the plea agreement, Blakely had been decided but Booker had not. The dissent would require the government to have presaged both the fact and substance of the Supreme Court’s later decision and to have obtained an explicit waiver of the right to appeal based on the outcome of that future case. This burden is too high; though ambiguity in plea agreements should be construed in favor of defendants, both the explicit language and intent of the parties in this case provide an unambiguous basis for Turner’s waiver of his right to appeal based on Booker.
We are also not persuaded by the dissent’s argument that the district court’s affirmation of Turner’s right to appeal necessarily included his right to appeal the mandatory application of the Guidelines. As the district court noted, Turner certainly retained his right to appeal his sentence based on the Guidelines—as a result, he could challenge the court’s calculation of his criminal history and Guidelines sentencing range. An appeal based on the reasonableness of a Guidelines calculation is substantively different than an appeal based on whether the Guidelines should have been applied at all. The plea agreement waived only the second type of appeal—the very sort of appeal we decide today. As there is no reason to believe that the district court’s statements regarding Turner’s right to appeal were directed at an appeal of this type, they are not in conflict with our holding here.
For the foregoing reasons, Turner’s Booker appeal is denied.
III.
Turner next argues that the trial court’s use of general deterrence as the basis for his sentence violated 18 U.S.C. § 3553(a), which lists the allowable bases for sentencing. Further, he argues that even if general deterrence is allowed under § 3553(a), it was error for the district court to use general deterrence without making findings showing the need for such *408 deterrence. This issue is raised by the defendant for the first time on appeal, and as a result this court must apply plain error analysis to determine the outcome of the claim. We hold that the district court committed no error by considering general deterrence in this case; further, even if error did exist, it would not be plain or obvious.
Under § 3553(a)(2)(B), judges may impose a sentence “to afford adequate deterrence to criminal conduct.” Even though the plain meaning of the statutory language is not expressly limited, Turner argues that this phrase should be read to include only specific deterrence because each of the other three sentencing factors in § 3553(a)(2) are focused on the offender’s conduct rather than considerations other than the crime at issue.
We are not convinced that the structure and context of § 3553(a)(2) compel the conclusion that general deterrence is an unacceptable basis for sentencing. First, some sentencing factors do focus on considerations other than the crime at issue. Under § 3553(a)(6), for example, courts must consider the disparity between the defendant’s sentence and other sentences for similar acts. The plain language of the statute—that courts may “afford adequate deterrence” in sentencing—also militates against limiting the authority of the court to specific deterrence. Nothing in the explicit language indicates a congressional intent to limit the court’s authority. We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing. See United States v. Barbara, 683 F.2d 164, 167 (6th Cir.1982) (noting traditional use of both specific and general deterrence). As a result, we hold that the court committed no plain error in this case.
Turner raises a second argument about the propriety of considering general deterrence, claiming that “the use of general deterrence to increase an individual sentence ... should not be permitted in the post-Booker era of sentencing.” Turner bases this argument on policy considerations; he argues that individual judges are poorly situated to make sentencing decisions based on deterrence because they lack the necessary, global information and expertise to effect non-arbitrary sentences.
This argument cannot succeed under the facts of this case because Turner was not sentenced in a post -Booker context. We have held that Turner waived his Booker challenge, and the court therefore validly applied the Guidelines. The court’s sentencing discretion was constrained by the Guidelines determined by the Sentencing Commission, and Turner has not asserted that the Guidelines were wrongly applied. The Sentencing Commission suffers from none of the shortcomings that Turner offers as to individual judges and is an appropriate body for considering the policy effects of deterrence in sentencing.[3] Turner’s argument relies on the impropriety of the individual judge’s consideration of general deterrence and fails to acknowledge the influence of the Sentencing Commission pre-Booker; as a result, it must fail. We therefore affirm the district court’s sentencing determination in this case.
IV.
For the foregoing reasons, we AFFIRM the district court’s sentencing decision.

. Split confinement refers to a sentence that allows part of the sentence to be served out of the penitentiary.

. Rule 11(c)(1) states in pertinent part that:
If the defendant pleads guilty ... to ... a charged offense ..., the plea agreement may specify that an attorney for the government will: ... (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

. Turner concedes that it was partially to avoid arbitrariness in sentencing that the Guidelines were developed.