NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0320n.06
Filed: May 6, 2009

No. 07-4153

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JOSE LORETO MARISCAL, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: MERRITT, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Jose Mariscal appeals his sentence following his guilty plea to a drug-conspiracy charge. Mariscal argues that the district court erred in holding him responsible for 150 or more kilograms of cocaine. We reject his arguments, and affirm.

I.

Mariscal pleaded guilty, without a plea agreement, to one count of conspiracy to distribute and possess with intent to distribute 5 or more kilograms of cocaine. Three other members of the conspiracy—Frank Badgett, Gustavo Rivas, Jr., and Ramon Cardenas—reached plea agreements with the government in exchange for their testimony and assistance. Badgett admitted in his agreement that he was responsible for at least 50 but less than 150 kilograms of cocaine. Rivas

admitted that he was responsible for at least 15 but less than 50 kilograms. Cardenas admitted that he was responsible for at least 5 but less than 15 kilograms.

The three co-conspirators testified at Mariscal's sentencing hearing. Badgett testified that he began purchasing large quantities of cocaine from Mariscal in late 2001 or early 2002. Badgett stated that, by mid-2002, Mariscal was distributing a total of approximately 20 kilograms of cocaine per month to Rivas, Walter Holston, and himself. Badgett testified that the quantities "picked up" between 2002 and 2006, to a peak of approximately 20 kilograms per week sometime in 2005 or 2006. Badgett himself obtained approximately 30 to 40 kilograms per month from Mariscal starting in April 2005. Badgett further testified that Mariscal told him two or three days before Badgett was arrested that he had obtained a shipment of 121 kilograms of cocaine. Badgett estimated that, in total, he personally received approximately 150 to 200 kilograms of cocaine from Mariscal.

Rivas testified that he stored large quantities of cocaine at his house for Mariscal from 2003 to 2006. Rivas testified that couriers delivered 5- or sometimes 10-kilogram loads of cocaine from Mariscal's home in Chicago, Illinois to Rivas's home in Toledo, Ohio. Rivas estimated that he received between 100 and 150 kilograms of cocaine from Mariscal from 2004 to 2006, but he conceded having difficulty remembering dates, and said he did not have a clear memory of how much cocaine was involved in each delivery or of how many deliveries there were.

Cardenas testified that he transported cocaine for Mariscal. Mariscal told Cardenas by phone "where to go, where to pick up[,] and where to drop the loads[.]" Cardenas specifically recalled three loads of 80, 87, and 121 kilograms of cocaine that he picked up, at Mariscal's direction, from a truckers' garage in Kankakee, Illinois. The 121-kilogram load was broken down into five laundry

bags of 20 kilograms and one bag of 21 kilograms of cocaine.  Cardenas then delivered the 21-kilogram bag to Badgett and Holston in Toledo.

After hearing the co-conspirators' testimony, the district court found Mariscal responsible for 150 kilograms or more of cocaine.  The court thereafter sentenced Mariscal to 300 months' incarceration.

This appeal followed.

II.

Mariscal's only argument on appeal is that the evidence does not support the district court's finding that he was responsible for 150 or more kilograms of cocaine.  Mariscal does not contest the district court's *authority* to make findings of fact of drug quantity above the facts admitted but only the *correctness* of the finding.  We review the district court's  finding for clear error.  *United States v. Walton*, 908 F.2d 1289, 1300-01 (6th Cir. 1990).

The district court's relevant-conduct determination must be supported by a preponderance of the evidence.  *Id.* at 1301.  "[T]he guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible."  *Id.* at 1302 (emphasis in original).  The district court "must err on the side of caution" in making a drug-quantity estimate.  *Id.*

Here, the district court based its estimate on Cardenas's testimony, which it found "especially credible."  The court noted that Cardenas "testified unequivocally, and . . . with great credibility, that the amount that he was aware of was 288 kilograms based on his three ventures and based on his

firsthand knowledge of loading and unloading some of these amounts[.]" The court also found Badgett's testimony credible, particularly his corroboration of the 121-kilogram shipment Cardenas testified he had received from Mariscal. The court did not find Rivas's testimony credible, and did not rely on it. The court stated that it was "proceeding with caution in [its] calculations[,]" but that it could "say with certainty it was over 150 kilograms" based on Cardenas's testimony.

Mariscal argues that the district court failed to consider inconsistencies between the conspirators' testimony, and failed to "explain the facts upon which it based [its] estimation with reasonable clarity[.]" Appellant's Br. at 29-30. But the record demonstrates otherwise. The court considered Rivas's 100- to 150-kilogram estimate, and his testimony regarding various 5- and 10-kilogram deliveries, but noted that Rivas "was a bit rusty on his recollection, [and] perhaps not the best with math[.]" It also considered Badgett's estimate of 150 to 200 kilograms, and noted that "if you did some calculating, piecemeal of his testimony, you might find that it approached the 200 kilogram amount." Ultimately, the court explained that it was basing its estimate on Cardenas's testimony because Cardenas had "firsthand knowledge" of and "testified unequivocally" about three specific shipments of 80, 87, and 121 kilograms of cocaine. The court thus considered the inconsistencies between the conspirators' testimony and clearly identified the facts on which it based its estimate.

Mariscal also argues that the district court failed to consider the discrepancies between the co-conspirators' testimony, on the one hand, and the amounts for which they agreed to be held responsible in their plea agreements, on the other. Those amounts were less than 150 kilograms for each co-conspirator. But the plea agreements were based only on the drug quantities that the

government knew about *prior* to plea negotiations. And during proffer sessions for their pleas, Badgett, Rivas, and Cardenas disclosed additional quantities with which they—and Mariscal—were personally involved. Although the district court could not consider those quantities in determining the co-conspirators' own Guidelines ranges, *see* U.S.S.G. § 1B1.8, the court properly considered them in determining the drug quantity for which Mariscal was responsible. *See United States v. Milan*, 398 F.3d 445, 456 (6th Cir. 2005).

A preponderance of the evidence, therefore, easily supports the district court's finding that Mariscal was responsible for 150 or more kilograms of cocaine. Cardenas testified about three specific cocaine loads that he picked up from a Chicago-area garage at Mariscal's direction; and those three loads alone easily exceeded 150 kilograms.

We therefore affirm the judgment of the district court.