NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0270n.06
Filed: April 8, 2005

No. 04-5165

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GERALD GILLIAM, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COLE and SUTTON, Circuit Judges; ZATKOFF, District Judge.[*]

SUTTON, Circuit Judge. Gerald Gilliam challenges his 121-month sentence, which stems from a guilty plea to one count of conspiracy to possess and distribute five or more kilograms of cocaine and to one count of attempted possession of cocaine with intent to distribute. *See* 21 U.S.C. §§ 846 & 841. Gilliam claims that the district court erred in refusing to apply a two-level reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, which apply when a non-leader defendant "truthfully provide[s] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Gilliam also claims the district court erred in refusing to apply another two-level reduction

---

[*]The Honorable Lawrence P. Zatkoff, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

for his purported minor role in the offense. *See* U.S.S.G. § 3B1.2(b). Seeing no merit to either claim, we affirm the district court's judgment.

I.

On January 9, 2003, a California Highway Patrol officer stopped a car occupied by Roger Moussa Bia and Mohamed Moussa Tamboura. Police searched the car and found seven kilograms of cocaine in a backpack hidden in the trunk. Bia and Tamboura informed officers that they worked for Gilliam, who had hired them to transport money from Louisville, Kentucky, to a man in Glendale, California, and to return to Louisville with several kilograms of cocaine. Bia and Tamboura reported making about 15 such trips under Gilliam's direction, transporting five to ten kilograms of cocaine per trip and receiving $5,000 to $6,000 per trip from Gilliam for their work.

Drug Enforcement Agency officials transported Bia, Tamboura and the seized cocaine to Kentucky, where the officials replaced the real cocaine with fake cocaine. In the presence of the agents, Bia called Gilliam and arranged a meeting at a Waffle House restaurant in Louisville. Gilliam arrived, Bia delivered the original backpack with the fake cocaine inside and Gilliam returned to his vehicle, where he was arrested.

On September 8, 2003, Gilliam pleaded guilty to one count of conspiracy to possess and distribute five or more kilograms of cocaine and to one count of attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841. In a signed statement, Gillian admitted to the following: "I was involved in a conspiracy to distribute cocaine. I would be

contacted to pick up money and deliver it to another person who then went and got the cocaine. When he returned he called me and I picked up the drugs and delivered them to the person who had given me the money. I did this approximately 5 times." JA 60. (Bia and Tamboura, incidentally, also were charged in the case, but those charges were dismissed after the district court ruled that the evidence against them was inadmissible.)

In the plea agreement, Gilliam and the government agreed that the charges carried a minimum sentence of 120 months of imprisonment under 21 U.S.C. § 841(b)(1)(A). Plea Agreement at 1. The plea agreement also provided as follows:

10. At the time of sentencing, the United States will

—recommend a sentence of imprisonment within the applicable Guideline Range, but not less than any mandatory minimum term of imprisonment required by law.

. . .

—not oppose a reduction of 2 levels below the otherwise applicable Guideline for "acceptance of responsibility" as provided by § 3E1.1(a), provided [that defendant does not engage in certain specified future conduct].

—[s]tipulate that the quantity and identity of the controlled substance which is attributable to the substantive and conspiratorial acts of the defendant is at least 15 kilograms but less than 50 kilograms of cocaine.

11. Both parties have independently reviewed the Sentencing Guidelines applicable in this case, and in their best judgment and belief, conclude as follows:

A. The Applicable Offense Level should be calculated using at least 15 but less than 50 kilograms of cocaine as the quantity and identity of the controlled substance attributable to the substantive and conspiratorial acts of the defendant. The parties agree that an aggravating role adjustment under Guideline § 3A1.1 as a leader organizer is not appropriate for the defendant under [the] facts of this case. The application of other adjustments to the base offense level are open for argument of the parties at sentencing.

B.  The Criminal History of defendant shall be determined upon completion of the presentence investigation, pursuant to Fed. R. Crim. P. 32(c)(2).

C.   The foregoing statements of applicability of sections of the Sentencing Guidelines and the statement of facts are not binding upon the Court.  The defendant understands the Court will independently calculate the Guidelines at sentencing, and defendant may not withdraw the plea of guilty solely because the Court does not agree with either the statement of facts or Sentencing Guideline application.

. . .

20. Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors.  Defendant states that he has informed the United States Attorney's Office and the Probation Officer, either directly or through his attorney, of all mitigating factors.  Defendant will not oppose imposition of a sentence incorporating the disposition provided for within this Agreement.

Plea Agreement at 4–5, 7.  Under the plea agreement, then, Gilliam's total offense level would be 32, which would yield a sentencing range of 121 to 151 months, given his uncontested level I criminal history category—if, that is, the district court agreed with the recommendations in the plea agreement.

Contrary to these recommendations, however, the presentence investigation report determined that 75 kilograms of cocaine was attributable to Gilliam's acts and found that his direction of Bia and Tamboura warranted a two-level leadership-role enhancement.  After applying a two-level reduction for acceptance of responsibility, the report calculated a total offense level of 36, yielding a sentencing range of 188 to 235 months.

At the sentencing hearing, the district court accepted the stipulations in the plea agreement, finding Gilliam responsible for between 15 and 50 kilograms, not 75 kilograms, and rejecting the

presentence report's recommendation for a leadership-role enhancement. At the same time, the district court rejected Gilliam's requests for (1) a two-level reduction under the safety-valve provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, available if a non-leader defendant "truthfully provide[s] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," and (2) a two-level reduction for his minor role in the conspiracy. Ultimately, then, the district court's rulings comported with the recommendations in the plea agreement, leading to a sentencing range of 121 to 151 months, and the district court imposed concurrent sentences of 121 months on each count. On appeal, Gilliam challenges the district court's conclusion that he was not eligible for a two-level reduction under the safety-valve provision or a two-level reduction for playing a minor role in the offense.

## II.

When a defendant challenges the district court's application of the Federal Sentencing Guidelines, we review the factual determinations for clear error and legal determinations de novo. *See United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005) (applying this standard after *Booker*); *United States v. Villegas*, ___ F.3d ___, 2005 U.S. App. LEXIS 4517, at *8 (5th Cir. Mar. 17, 2005) ("We conclude that when a district court has imposed a sentence under the Guidelines, this court continues after *Booker* to review the district court's interpretation and application of the Guidelines de novo.").

We turn first to Gilliam's safety-valve claim. The safety valve is available only to a non-leader defendant who, among other requirements, either (1) "truthfully provide[s] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" or (2) has no such information or evidence. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. Gilliam concedes that he had such information and that he did not provide it to the government. As the district court found, that concession ends the inquiry and ends Gilliam's eligibility for the safety-valve reduction.

Attempting to counter this conclusion, Gilliam argues that he refrained from providing the information only because he feared repercussions by those who would be implicated by his disclosures. But, as Gilliam further acknowledges, *see* Gilliam Br. at 7, fear of retaliation does not relieve a defendant of the obligation to make a full disclosure in order to qualify for the safety-valve reduction. *See United States v. Roman-Zarate*, 115 F.3d 778, 785 (10th Cir. 1997) ("If [the defendant] chooses not to divulge names of his drug couriers or contacts because he suspects his colleagues-in-crime may be less than supportive of his decision, he is entitled to remain silent; but, he is no longer entitled to special treatment from the district court [under the safety-valve provision]."); *United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996) ("Defendants often have reasons, such as loyalty to a confederate or fear of retribution, for not wanting to make full disclosure. But full disclosure is the price that Congress has attached to relief under the statute, and the burden remains on the defendant to prove his entitlement."); *cf. United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996) (holding that defendant has the burden of establishing eligibility for the

safety-valve provision, which "clearly require[s] an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses").

In a variation on this argument, Gilliam persists that because defendants may satisfy their obligation under the safety-valve provision by providing the relevant information to the government while nonetheless refusing to testify in open court, *see United States v. Carpenter*, 142 F.3d 333, 336 (6th Cir. 1998), "[t]he government could have provided a safe haven for such disclosure and made representations to the court that [Gilliam] cooperated under the safety valve statute without disclosing the substance of that cooperation." Gilliam Br. at 8. But Gilliam acknowledges that he bears the burden of establishing his eligibility for a safety-valve reduction, and he makes no claim that he ever expressed a willingness to disclose the information under any circumstances. In point of fact, the district court continued Gilliam's first sentencing hearing for the specific purpose of giving him more time to comply with the safety-valve disclosure requirements. Gilliam thought more about the option, and declined to exercise it. On this record, Gilliam's clear and consistent decision to withhold information precludes application of the safety-valve reduction, and the district court accordingly did not err in making this determination.

We turn next to Gilliam's minor-role reduction claim under U.S.S.G. § 3B1.2(b). Gilliam

has the burden of proving, by a preponderance of the evidence, that he is entitled to the reduction. Under § 3B1.2, a defendant can receive a four-level reduction for being a minimal participant or a two-level reduction for being a minor participant. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group," and a minor participant is one who "is less

culpable than most other participants, but whose role could not be described as minimal."

*United States v. Solorio*, 337 F.3d 580, 601–02 (6th Cir. 2003) (quoting U.S.S.G. § 3B1.2, cmt. nn. 4, 5) (other quotation marks and citations omitted). Claiming his role was minor, Gilliam argues that he was merely a courier for his superiors in the conspiracy, in the same mode as Bia and Tamboura, and that he never knew the amount of money or cocaine involved in the deliveries. The problem with this argument, however, is that the evidence showed that Gilliam hired Bia and Tamboura, directed their cross-country deliveries on several occasions and personally paid them for their work. The district court indeed described it as a "close call" whether to *enhance* Gilliam's sentence for a leadership role, but ultimately accepted the plea agreement's stipulation of no enhancement, stating, "I don't think he's less than neutral. I think he's either more of a leader or a neutral. I'll go along with neutral." JA 45. Under these circumstances, the district court did not err in rejecting Gilliam's request for a minor-role reduction. *See Solorio*, 337 F.3d at 602 (finding no clear error in denying minor-role reduction when supervisor directed others to transport extensive amounts of drugs, even when defendant did not personally make the deliveries).

Gilliam has not asked us to remand his case for resentencing in the aftermath of *United States v. Booker*, 125 S. Ct. 738 (2005), and his plea agreement would appear to explain why. Under the plea agreement, Gilliam agreed to be sentenced under the Guidelines. He agreed that for purposes of determining the applicable Guidelines range, he would be responsible at a minimum for between 15 and 50 kilograms of cocaine. He agreed that an enhancement for a leadership role was

not applicable to his case and that a reduction for acceptance of responsibility could be pursued. And while Gilliam retained discretion under the agreement to pursue other reductions under the Guidelines, he agreed "not [to] withdraw the plea of guilty solely because the Court does not agree with either the statement of facts or Sentencing Guideline application," Plea Agreement at 5, and "not [to] oppose imposition of a sentence incorporating the disposition provided for within this Agreement," Plea Agreement at 7. Just as Gilliam waived his rights to a trial by jury, Plea Agreement at 2, he waived his right to be sentenced under any system other than the mandatory Guidelines system in place at the time of his plea, a waiver that we have held is valid even after *Booker*. *See United States v. Bradley*, 400 F.3d 459, 465 (6th Cir. 2005).

## III.

For these reasons, we affirm the judgment of the district court.