NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0176n.06
Filed: March 8, 2006

No. 04-6407

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| ROBERT E. TURNER, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
|     Defendant-Appellant. | ) | TENNESSEE |
| | ) | |

Before: MOORE, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**. Defendant-appellant Robert Turner was indicted on sixty counts of health care fraud related to his company's knowing submission of false insurance claims. Pursuant to a plea agreement, Turner pled guilty to one count of fraud, and the remaining counts were dismissed. The district court sentenced Turner under the United States Sentencing Guidelines ("Guidelines"), relying on general deterrence as the basis for the sentence. Turner now seeks resentencing in response to the Supreme Court's decision in *United States v. Booker*, which reduced the Guidelines to an advisory role in the sentencing process. 543 U.S. 220, 125 S.Ct 738 (2005). Turner also claims that (1) the use of general deterrence as a sentencing goal is illegal under 18 U.S.C. § 3553(a); and (2) even if legal, judges' discretion in the use of general deterrence as a sentencing factor should be constrained post-*Booker*.

1

For the following reasons, we AFFIRM the district court ruling.

I.

Robert Edward Turner operated a series of cardiovascular testing operations between April 1996 and 2000. Turner's cardiovascular testing operations involved offering free cardiovascular screening at businesses. Depending on the results of the initial screening, Turner's businesses conducted further, expensive testing on an individual basis and submitted the bills for these tests to various insurance companies for reimbursement. Valid insurance reimbursement claims require that a qualified physician review the initial screening and request, perform, and review the results of the follow-up testing.

Between February 15, 1998 and January 31, 2001, Turner's businesses operated pursuant to contracts with doctors. Turner acquired signature stamps from these doctors but never called upon them to perform any professional duty. Instead, the stamps were used, without the physicians' knowledge, to misrepresent that (1) the results of the cardiovascular tests had been reviewed by a physician, and (2) a physician had diagnosed each patient. The plea agreement states that Turner was "at least wilfully ignorant" of the use of the stamps to submit false insurance reimbursement documents. During the period of this fraud, Turner has admitted submitting reimbursement claims totaling $1,273,733, for which his businesses received $958,515.

Turner was indicted by a grand jury on January 13, 2004 on sixty counts of fraudulently submitting insurance claims in violation of 18 U.S.C. § 1347. He pled guilty pursuant to an agreement that relied on stipulated facts. The agreement stipulated in paragraph 3 that "Mr. Turner acknowledges that he understands that his case is governed by the . . . Guidelines . . . . Defendant affirms that no promises have been made by the United States as to what the . . . Guidelines will be.

2

Mr. Turner further acknowledges that he understands that the Court will determine the appropriate sentence under the . . . Guidelines." The agreement further stated that "[p]ursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties expressly agree that the appropriate sentence in this case will be determined by application of the . . . Guidelines and that there will be no departures from those Guidelines except and unless upon motion by the United States for a downward departure. . . . The defendant agrees to waive any challenge to the validity of the Sentencing Guidelines." During the plea hearing, which predated *Booker*, the court notified Turner that the Guidelines were of uncertain effect. Turner acknowledged his understanding. The court further instructed Turner that his plea was binding even if the sentence was harsher than expected, and Turner acknowledged this fact.

The court sentenced Turner pursuant to the Guidelines on November 19, 2004. The Presentence Investigation Report calculated Turner's offense level to be 16, including a downward departure of 3 levels for acceptance of responsibility. Prosecutors entered a U.S.S.G. § 5K1.1 motion for a downward departure because Turner provided substantial information about other fraudulent cardiovascular testing operations. At the sentencing hearing, the court noted this motion and reduced the sentencing level to 14, producing a sentencing range of 15-21 months. At the hearing, Turner and his attorney sought a more lenient sentencing level that would include the possibility of split confinement.[1] The court, however, declined this request and instead sentenced Turner to a term of eighteen months in prison. The court imposed the sentence as a general deterrent to white-collar crime. Noting that none of the community protection, specific deterrence, or

---

[1] Split confinement refers to a sentence that allows part of the sentence to be served out of the penitentiary.

3

retribution justifications for punishment apply in this case, the court spoke at length about why prison sentences are especially important for deterring white-collar crime and thus why a lengthy prison sentence was justified in this case. Turner filed a notice of appeal on November 30, 2004.

II.

The court reviews criminal appeals of district court judgments for plain error where the issues appealed were not raised below. Fed. R. Crim. P. 52(b); *United States v. Cotton*, 535 U.S. 625, 631 (2002). In this case, the defendant failed to object below to the mandatory application of the Guidelines; the Supreme Court has acknowledged that plain error review is appropriate in this situation. *Booker*, 125 S. Ct. at 769; *see also United States v. Milan*, 398 F.3d 445, 450 (6th Cir. 2005). Similarly, the defendant failed to object to the imposition of the sentence based on general deterrence goals; as a result, this issue is also governed by plain error analysis.

A court has committed plain error where the defendant shows that there is: "(1) error (2) that is plain (3) and that affects substantial rights." *Milan*, 398 F.3d at 451 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). An error is "plain" if it is clear or obvious. *United States v. Olano*, 507 U.S. 725, 734 (1993). A plain error affects substantial rights if it is prejudicial, or if it "affected the outcome of the district court proceedings." *United States v. Barnett*, 398 F.3d 516, 526 (6th Cir. 2005) (quoting *Cotton*, 535 U.S. at 632). The court may notice a forfeited error if all three conditions are met and the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732; *see also Milan*, 398 F.3d at 451.

The Supreme Court held in *Booker* that the mandatory application of the Guidelines to determine sentences violated the defendants' Sixth Amendment right to have "[a]ny fact . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by

4

a plea of guilty or a jury verdict . . . admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756 (Stevens, J). This holding reduced the Guidelines from a mandatory to an advisory role. *Id.* at 756-57 (Breyer, J.); *Barnett,* 398 F.3d at 525; *United States v. Oliver*, 397 F.3d 369, 381 n.3 (6th Cir. 2005). The Supreme Court also made clear in *Booker* that defendant Fanfan, whose sentence did not violate the Sixth Amendment, could also seek resentencing because its holding applies to "all cases on direct review." 125 S. Ct. at 769. Like Fanfan, Turner cannot allege a Sixth Amendment claim: his sentence is "lower than [that] . . . authorized by the Guidelines as written." *Id.* at 769. He nonetheless retains a statutory claim. *See United States v. Bradley,* 400 F.3d 459, 463 (6th Cir. 2005); *United States v. Hamm*, 400 F.3d 336, 339 (6th Cir. 2005) (both allowing appeal where sentence was based solely on facts admitted in the guilty plea).

Treatment of the Guidelines as mandatory is plain error in this circuit. *Oliver*, 397 F.3d at 380-81, *Barnett*, 398 F.3d at 529-30; *United States v. McCraven*, 401 F.3d 693, 700 (6th Cir. 2005). Thus, Turner's appeal would normally be reversible. The United States argues, however, that Turner, in his plea agreement, waived his right to appeal his sentence.

It is clear as a matter of law that defendants may waive both constitutional and statutory rights as part of a plea bargain. *Bradley*, 400 F.3d at 463-64. The Supreme Court has held that plea agreements may also bar appeals based on changes in the law that occurred post-appeal. *Brady v. United States*, 397 U.S. 742, 757 (1970). The Sixth Circuit has applied this reasoning in the *Booker* resentencing context, holding that claims for resentencing may validly be waived by agreement. *Bradley*, 400 F.3d at 464.

Though it is clear that defendants may waive the right to appeal their sentences under the

5

Guidelines, the requirements for doing so are considerably murkier. *Bradley*, the first decided case in the Sixth Circuit, held that the defendant waived his right to appeal where both parties specifically agreed to waive that right and agreed on the proper offense level under the Guidelines. 400 F.3d at 461. The *Bradley* court suggested that either of these provisions was sufficient to create a waiver of the right to appeal for resentencing. *Id.* at 465. The *Bradley* court's opinion regarding the sufficiency of an agreement that the Guidelines would govern sentencing is *dicta*, however, because of the defendant's explicit waiver in the case. The court in *United States v. Amiker* therefore declined to treat the *Bradley* holding as binding precedent when presented with the narrower issue. 414 F.3d 606, 607 (6th Cir. 2005). In *Amiker*, the court held that where a defendant's Sixth Amendment claims were abridged, an acknowledgment in the plea that sentencing would depend on the Guidelines did not effectuate a waiver of the right to appeal because "[t]he plain meaning of [the plea agreement] language, and the plain language of *Booker* and *Blakely* [*v. Washington*, 542 U.S. 296 (2004)], indicate that consent to judicial fact-finding cannot be found in an ordinary plea agreement." *Id.* The court further noted that all contemporary plea agreements included, either explicitly or implicitly, the requirement that the mandatory Guidelines would govern sentencing. *Id.* at 608.

The *Amiker* holding expressly left open the question of whether statutory *Booker* claims such as Turner's may be waived by a general statement about the mandatory nature of the Guidelines in a plea agreement. *Id.* The court had previously discussed the issue in *dicta* in *United States v. Gilliam*, 127 F. App'x 820, 824 (6th Cir. 2005), and theorized that in such a case the appeal right would be waived. This *dicta*, like that in *Bradley*, appears to have been superseded by the recent case of *United States v. Puckett*. 422 F.3d 340 (6th Cir. 2005), 2005 WL 2123790 (6th Cir. Sept.

6

6, 2005).  In *Puckett*, the defendant was sentenced pursuant to a plea that acknowledged the

mandatory nature of the Guidelines; unlike in *Amiker*, the trial judge did not effect an upward

departure, so the defendant could raise no Sixth Amendment claim on appeal. *Id.* at 343.  The court

held that *Amiker* applied, and that as a result the defendant had not waived his right to appeal. *Id.*

The government bases its waiver argument on the text of the plea agreement and on Rule

11(c)(1)(C) of the Federal Rules of Criminal Procedure.[2]  First, Turner acknowledged in the plea

agreement that the sentencing process would be governed by the Guidelines.  The government

contends that this agreement is sufficient to effect a waiver of defendant's right to appeal.  In

addition, the government identifies a specific provision of the plea agreement that it argues effects

an explicit waiver of the right to appeal under Rule 11(c)(1)(C).  That paragraph states that "the

appropriate sentence in this case will be determined by application of the . . . Guidelines . . . .  The

defendant agrees to waive any challenge to the validity of the . . . Guidelines."

We hold that the text of the plea agreement is sufficiently clear to effect an explicit waiver

of Turner's right to appeal.  Specifically, we agree with the government that Turner explicitly and

knowingly waived his right to appeal when he: (1) agreed in his plea that the Guidelines will control

his sentence; (2) agreed in his plea "to waive *any* challenge to the validity of the Guidelines"

(emphasis added); and (3) acknowledged in open court that he knew that he had waived his rights.

As the district court noted, there was significant uncertainty about the continuing applicability of

---

[2] Rule 11(c)(1) states in pertinent part that:
   If the defendant pleads guilty . . . to . . . a charged offense . . . , the plea agreement
   may specify that an attorney for the government will: . . . (C) agree that a specific
   sentence or sentencing range is the appropriate disposition of the case, or that a
   particular provision of the Sentencing Guidelines, or policy statement, or sentencing
   factor does or does not apply (such a recommendation or request binds the court once
   the court accepts the plea agreement).

7

the Guidelines after *Blakely*, and Turner's waiver seems intentionally crafted to shield the court's sentencing decision from appeal in light of this uncertainty. Because of the explicit nature of the waiver in this case, we hold that the defendant waived his right to appeal his sentence. *Bradley*, 400 F.3d at 461.

The dissent argues that Turner is not challenging the validity of the guidelines in this appeal. This distinction is semantic and ultimately unpersuasive because it is possible to cast even the dissent's chosen framing of this appeal as a challenge to the validity of the Guidelines: Under this construction, Turner here challenges the *validity* of the district court's mandatory application of the Guidelines. This contractual construction is unambiguous and is supported by the clear intent of the parties to avoid *all Booker* issues in this case. To ask the government to be more explicit would be manifestly contrary to the spirit of the bargain; when the parties negotiated the plea agreement, *Blakely* had been decided but *Booker* had not. The dissent would require the government to have presaged both the fact and substance of the Supreme Court's later decision and to have obtained an explicit waiver of the right to appeal based on the outcome of that future case. This burden is too high; though ambiguity in plea agreements should be construed in favor of defendants, both the explicit language and intent of the parties in this case provide an unambiguous basis for Turner's waiver of his right to appeal based on *Booker*.

We are also not persuaded by the dissent's argument that the district court's affirmation of Turner's right to appeal necessarily included his right to appeal the mandatory application of the Guidelines. As the district court noted, Turner certainly retained his right to appeal his sentence *based on the Guidelines* – as a result, he could challenge the court's calculation of his criminal history and Guidelines sentencing range. An appeal based on the reasonableness of a Guidelines

calculation is substantively different than an appeal based on whether the Guidelines should have been applied at all. The plea agreement waived only the second type of appeal – the very sort of appeal we decide today. As there is no reason to believe that the district court's statements regarding Turner's right to appeal were directed at an appeal of this type, they are not in conflict with our holding here.

For the foregoing reasons, Turner's *Booker* appeal is denied.

### III.

Turner next argues that the trial court's use of general deterrence as the basis for his sentence violated 18 U.S.C. § 3553(a), which lists the allowable bases for sentencing. Further, he argues that even if general deterrence is allowed under § 3553(a), it was error for the district court to use general deterrence without making findings showing the need for such deterrence. This issue is raised by the defendant for the first time on appeal, and as a result this court must apply plain error analysis to determine the outcome of the claim. We hold that the district court committed no error by considering general deterrence in this case; further, even if error did exist, it would not be plain or obvious.

Under § 3553(a)(2)(B), judges may impose a sentence "to afford adequate deterrence to criminal conduct." Even though the plain meaning of the statutory language is not expressly limited, Turner argues that this phrase should be read to include only specific deterrence because each of the other three sentencing factors in § 3553(a)(2) are focused on the offender's conduct rather than considerations other than the crime at issue.

We are not convinced that the structure and context of § 3553(a)(2) compel the conclusion that general deterrence is an unacceptable basis for sentencing. First, some sentencing factors do

focus on considerations other than the crime at issue. Under § 3553(a)(6), for example, courts must consider the disparity between the defendant's sentence and other sentences for similar acts. The plain language of the statute – that courts may "afford adequate deterrence" in sentencing – also militates against limiting the authority of the court to specific deterrence. Nothing in the explicit language indicates a congressional intent to limit the court's authority. We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing. *See United States v. Barbara*, 683 F.2d 164, 167 (6th Cir. 1982) (noting traditional use of both specific and general deterrence). As a result, we hold that the court committed no plain error in this case.

Turner raises a second argument about the propriety of considering general deterrence, claiming that "the use of general deterrence to increase an individual sentence . . . should not be permitted in the post-*Booker* era of sentencing." Turner bases this argument on policy considerations; he argues that individual judges are poorly situated to make sentencing decisions based on deterrence because they lack the necessary, global information and expertise to effect non-arbitrary sentences.

This argument cannot succeed under the facts of this case because Turner was not sentenced in a post-*Booker* context. We have held that Turner waived his *Booker* challenge, and the court therefore validly applied the Guidelines. The court's sentencing discretion was constrained by the Guidelines determined by the Sentencing Commission, and Turner has not asserted that the Guidelines were wrongly applied. The Sentencing Commission suffers from none of the shortcomings that Turner offers as to individual judges and is an appropriate body for considering

10

the policy effects of deterrence in sentencing.[3]  Turner's argument relies on the impropriety of the

individual judge's consideration of general deterrence and fails to acknowledge the influence of the

Sentencing Commission pre-*Booker*; as a result, it must fail. We therefore affirm the district court's

sentencing determination in this case.

IV.

For the foregoing reasons, we AFFIRM the district court's sentencing decision.

---

[3] Turner concedes that it was partially to avoid arbitrariness in sentencing that the Guidelines were developed.

11

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Because I believe that Turner did not unambiguously waive the right to challenge his sentence on the basis of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), I respectfully dissent.

Turner's plea agreement includes the following provision: "The defendant agrees to waive any challenge to the *validity* of the Sentencing Guidelines." Joint Appendix ("J.A.") at 22-23 (Plea Agreement ¶ 12) (emphasis added). Turner does *not* challenge the validity of the Guidelines; instead, he simply argues that the district court erred by treating the Guidelines as mandatory rather than advisory. In fact, Turner explicitly acknowledges that the Guidelines *are valid* and must be considered at sentencing. Appellant's Br. at 17 (recognizing that under *Booker*, "judges should continue 'to take account of the Guidelines together with other sentencing goals,'" and "a sentencing court must at least consider the Guidelines in fashioning a sentence" (quoting *Booker*, 125 S. Ct. at 764)). It is clear, then, that what Turner challenges is not the *validity* of the Guidelines but simply their *mandatory application* to him.[1] Because the plain language of the waiver provision prohibits only challenges to the validity of the Guidelines, Turner's appeal does not come within its terms and is not waived.

The same result would be compelled even if we were to assume that the plea agreement's text is unclear. First, the proceedings in the district court counsel interpreting the clause not to reach

---

[1]The majority claims that this distinction is purely a semantic one. Yet the majority also concedes that the provision did not effect a waiver of the right to appeal a miscalculation of the Guidelines. I fail to see, and the majority fails to explain, how a challenge to the calculation of the Guidelines does *not* attack the validity of the Guidelines, but a challenge to the mandatory application of the Guidelines *does* constitute such an attack. In either case, the defendant's argument is that the Guidelines were misapplied (whether by miscalculation or erroneously mandatory application), which carries with it an implicit starting premise that the Guidelines are valid.

Turner's appeal: at both the plea colloquy and the sentencing hearing, the district court told Turner — without objection by the government — that he had a right to appeal.[2] J.A. at 39 (Rearraignment Tr. at 14) ("THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose? THE DEFENDANT: Yes, sir."), 61 (Sentencing Tr. at 19) ("THE COURT: . . . Mr. Turner, you have the right to appeal the sentence the Court just stated.").[3] Moreover, plea agreements are to be interpreted strictly, with

---

[2]The rule of *United States v. Fleming*, 239 F.3d 761 (6th Cir. 2001) — that when a defendant has explicitly waived his right to appeal, a district court's statements to the contrary are not controlling, *id.* at 765 — presents no bar to our consideration of these proceedings. The appellate waiver in *Fleming*, which provided that the "defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction and the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever," *id.* at 762, unambiguously encompassed the defendant's appeal. In contrast, where, as here, the interpretation of the plea agreement is at issue, extrinsic evidence may be considered. *E.g.*, *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004); *United States v. Gebbie*, 294 F.3d 540, 551 (3d Cir. 2002); *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir.), *cert. denied*, 531 U.S. 1057 (2000); *Hartman v. Blankenship*, 825 F.2d 26, 29 (4th Cir. 1987); *see also K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 757 n.5 (6th Cir. 1985). Furthermore, traditional principles of contract law — which we look to when interpreting plea agreements, *e.g.*, *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991) — support this result. It is well established that extrinsic evidence may be considered to resolve ambiguous contract terms. *E.g.*, *NILAC Int'l Mktg. Group v. Ameritech Servs., Inc.*, 362 F.3d 354, 359 (6th Cir. 2004); *Miller v. McLean County Unit Dist. No. 5* (*In re Modern Dairy of Champaign, Inc.*), 171 F.3d 1106, 1109 (7th Cir. 1999) (Posner, C.J.); 6 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 579, at 127 (interim ed. 2002); 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 33:39, at 808 (4th ed. 1999); Eric A. Posner, *The Parol Evidence Rule, the Plain Meaning Rule, and the Principles of Contractual Interpretation*, 146 U. PA. L. REV. 533, 534 (1998); *see also* RESTATEMENT (SECOND) OF CONTRACTS §§ 202 & cmt. a, 212 & cmt. b (1981) (permitting the consideration of extrinsic evidence even if no ambiguity exists); U.C.C. § 2-202 & cmt. 1(c) (1998) (same).

[3]According to the majority, the district court only meant that Turner "could challenge the court's calculation of his criminal history and Guidelines sentencing range." Majority Op. at 9. Nothing in the court's statements actually suggests such a limitation, and I am unwilling to conjure words to put in the district judge's mouth. Thus, I respectfully disagree with the majority's characterization.

ambiguities construed against the government. *E.g.*, *United States v. Johnson*, 979 F.2d 396, 399-400 (6th Cir. 1992) ("[B]oth constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in the plea agreements." (internal quotation marks and citations omitted)); *United States v. Gebbie*, 294 F.3d 540, 551-52 (3d Cir. 2002) (citing cases); RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words . . . ."). Finally, "it is particularly appropriate to construe the ambiguity against the government . . . where the government could have taken steps to avoid imprecision." *United States v. Fitch*, 282 F.3d 364, 368 (6th Cir. 2002). Here, the government easily could have drafted a waiver provision unambiguously encompassing Turner's appeal. *See United States v. Bradley*, 400 F.3d 459, 461, 465 (6th Cir.) (declining to reach a statutory *Booker* claim where the defendant had "waive[d] his right to appeal any resulting sentence directly or collaterally" (alteration in original)), *cert. denied*, — U.S. —, 126 S. Ct. 145 (2005).[4]

Turner did not waive his appeal requesting that he be sentenced under an advisory Guidelines scheme simply by agreeing "to waive any challenge to the *validity* of the Sentencing Guidelines." Nor did his agreement to be sentenced under the Guidelines effect a waiver of his appeal. *United*

---

[4]The majority believes that drafting a waiver that unambiguously encompasses statutory *Booker* appeals is "too high" a "burden" on the government. This claim is difficult to square with the ease with which it was done in *Bradley*. The fact is that the government drafted Turner's plea agreement, and it chose to use narrow language addressing only challenges to the *validity* of the Guidelines. The majority excuses the government from the consequences of its choice by lamenting that it could not have predicted the precise *Booker* remedy. It is puzzling, to say the least, to propose that although we hold a defendant to the language of his plea agreement when intervening cases make his bargain worse, *Bradley*, 400 F.3d at 463-64, we should be willing to rewrite the agreement to save the government from the same fate.

14

*States v. Smith*, 429 F.3d 620, 626-27 & n.5 (6th Cir. 2005); *United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005); *United States v. Amiker*, 414 F.3d 606, 607 (6th Cir. 2005).  In light of the absence of an appellate waiver, and because I agree with the majority that the district court committed plain error by treating the Guidelines as mandatory when it sentenced Turner, Majority Op. at 5, I would vacate his sentence and remand to the district court for resentencing.

Thus, I respectfully dissent.